564 So.2d 152 (1990)
Gregory ST. GEORGE, Appellant,
v.
STATE of Florida, Appellee.
No. 88-1494.
District Court of Appeal of Florida, Fifth District.
June 14, 1990.
Rehearing Denied July 26, 1990.
*153 James B. Gibson, Public Defender, and Nancye R. Crouch, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Dee R. Ball, Asst. Atty. Gen., Daytona Beach, for appellee.
EN BANC
DANIEL, Chief Judge.
Defendant, Gregory St. George, appeals from a judgment and sentence following an adjudication of direct criminal contempt.
*154 An information was filed by the state charging defendant with the offense of grand theft.[1] During either the booking procedure or an early court appearance, defendant told authorities that his name is not Gregory St. George but refused to reveal his "real name." The state filed a motion to compel identification requesting that the trial court order defendant to answer truthfully the following questions in open court:
1) What is your true name?
2) Where and when were you born?
3) Where have you resided in the past five years?
4) Where and when did you attend school?
5) Were you ever in the armed forces of the United States? If so, what branch and what dates?
After several hearings, during which defendant repeatedly invoked his constitutional right to remain silent, the trial court granted the state's motion to compel identification and ordered defendant to answer the questions listed above. Defendant refused. The court found defendant to be in direct criminal contempt and sentenced him to serve 179 days in the county jail.
On appeal, defendant contends that the order to disclose information infringes upon his privilege against self-incrimination as afforded by the Fifth Amendment to the United States Constitution and Article 1, Section 9 of the Florida Constitution. We agree.
The Supreme Court of the United States has ruled that the constitutional provision that no person shall be compelled in any criminal case to be a witness against himself provides the basis for "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence." Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964). See also Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In Schmerber, the Supreme Court specified that the privilege protects an individual from being compelled to testify against himself or otherwise provide the state with evidence of a testimonial or communicative nature. The "privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications... ." Schmerber, 86 S.Ct. at 1832. It is the extortion of information from the individual, the attempt to force him to disclose the contents of his own mind, that implicates the self-incrimination clause. Doe v. United States, 487 U.S. 201, 108 S.Ct. 2341, 2348, 101 L.Ed.2d 184 (1988). The privilege spares the individual from having to reveal, directly or indirectly, his knowledge of the facts relating him to the offense or from having to share his thoughts and beliefs with the government. Doe, 108 S.Ct. at 2349.
The privilege against self-incrimination does not, however, prohibit the government from compelling an individual to provide real or physical evidence since such evidence is not testimonial or communicative in nature. Hence, an individual may be compelled to speak or write provided that his speech or writing exemplars are not sought to disclose any knowledge that he might have. United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 767, 35 L.Ed.2d 67 (1973); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 1929, 18 L.Ed.2d 1149 (1967).
In order for the privilege to apply, the communication must not only be compelled by the government but must also convey incriminating information. Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 1576, 48 L.Ed.2d 39 (1976). Thus, an individual may invoke this privilege and refuse to answer official questions put to him in any proceeding, civil or criminal, formal or informal, only where the answers might incriminate him in future criminal proceedings. Lefkowitz v. Turley, 414 U.S. 70, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 *155 (1973). The privilege extends to answers that in themselves would support conviction as well as any information sought which would furnish a link in the chain of evidence needed to prosecute. The privilege protects against any disclosure which an individual reasonably believes could be used in a criminal prosecution or could lead to other evidence which might be so used. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972).
Once an individual has invoked his privilege against self-incrimination, it becomes the duty of the trial court to determine whether there is a reasonable basis for the assertion of the privilege and whether the privilege has been invoked in good faith. To sustain the privilege it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. Emspak v. United States, 349 U.S. 190, 75 S.Ct. 687, 692, 99 L.Ed. 997 (1955); Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).
The Supreme Court of Florida has recognized these constitutional limitations placed upon the state's ability to compel a defendant to disclose information by the adoption of rule 3.220 of the Rules of Criminal Procedure:
Rule 3.220 Discovery 
* * * * * *
(1) After the filing of the indictment or information and subject to constitutional limitations, a judicial officer may require the accused to:
(i) Appear in a line-up;
(ii) Speak for identification by witnesses to an offense;
(iii) Be fingerprinted;
(iv) Pose for photographs not involving re-enactment of a scene;
(v) Try on articles of clothing;
(vi) Permit the taking of specimens of material under his fingernails.
(vii) Permit the taking of samples of his blood, hair and other materials of his body which involves no unreasonable intrusion thereof;
(viii) Provide specimens of his handwriting; and
(ix) Submit to a reasonable physical or medical inspection of his body.
Noticeably absent from the aforementioned list is the authority of a judicial officer to require a defendant to verbally provide information concerning his identity or, put another way, to testify concerning the "contents of his own mind" concerning his identity.
Applying the foregoing principles of law, we conclude that the order compelling defendant to verbally disclose information concerning his identity constitutes a violation of defendant's privilege against self-incrimination. The record reveals that defense counsel informed the trial court that defendant invoked the privilege out of fear that, had he provided the prosecutor with the information sought, the information would have furnished a link in the chain of evidence needed to prosecute charges pending against him in another county.[2] It was, therefore, error for the trial court to grant the state's motion to compel information.
On appeal, the state presents the unique argument that, even if defendant has the constitutional right to remain silent, the trial court nonetheless properly found him guilty of contempt because defendant had the unqualified duty to comply with the trial court's order.
An aggrieved party's failure to comply with the terms of an order issued by a court acting with proper jurisdiction may normally be punished by contempt even if the order is, on appeal, found to be erroneous  the rationale being that the order must be obeyed until vacated or modified by that court or until the order has *156 been reversed on appeal, no matter how unreasonable and unjust the order may be. Health Clubs, Inc. v. State ex rel. Eagan, 377 So.2d 28, 30 (Fla. 5th DCA 1979). See also Rubin v. State, 490 So.2d 1001 (Fla. 3d DCA 1986); Wells v. State, 471 So.2d 620 (Fla. 5th DCA 1985). The stated reason behind this rule is that the need for such compliance outweighs any detriment to the party who may be temporarily affected by the order since the injury arising from an erroneous ruling in the lower court is usually not irreparable. Rubin, 490 So.2d at 1003. However, a party's failure to comply with an erroneous order compelling the disclosure of information is not subject to contempt when such compliance would result in irreparable injury:
Compliance could cause irreparable injury because appellate courts cannot always "unring the bell" once the information has been released. Subsequent appellate vindication does not necessarily have its ordinary consequence of totally repairing the error.
State v. Schmidt, 474 So.2d 899, 902 (Fla. 5th DCA 1985), quoting Maness v. Meyers, 419 U.S. 449, 95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975). Had defendant complied with the trial court's order compelling him to disclose information concerning his identification, he would have suffered irreparable injury. Accordingly, the judgment and sentence for direct criminal contempt is vacated.
VACATED.
COBB, SHARP, W., COWART, GOSHORN, HARRIS, PETERSON, and GRIFFIN, JJ., concur.
DAUKSCH, J., concurring specially with opinion.
DAUKSCH, Judge, concurring specially.
I concur. The constitutional right invoked by appellant is found in both the Fifth Amendment to the United States Constitution and Article I, section 9 of the Florida Constitution.
Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) holds that the Fifth Amendment prohibition against compelled self-incrimination protects only testimonial or communicative evidence and not real or physical evidence. The question on appeal is whether compelling an accused to verbally identify himself, as opposed to otherwise identifying himself, is constitutionally forbidden. Information which would have had the same practical effect of identifying the defendant could have been obtained through other constitutionally permissible methods. If the "inevitable discovery"[1] rule was applied and a constitutionally forbidden intrusion on that basis was allowed then the conviction could be upheld. There are many cases which permit nearly any intrusion upon an accused, except the forced verbal identification. That is, the state can require a suspect or an accused to do and donate many things, it just cannot ask him his name  if the answer in and of itself will incriminate him.
In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the United States Supreme Court held that the accused's privilege against self-incrimination was not violated by a lineup or by requiring the accused to wear strips of tape on his face and to speak the words allegedly uttered by the robber. See also United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (compelled voice exemplars).
In Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the United States Supreme Court further held that the forced taking of handwriting exemplars did not violate the defendant's Fifth Amendment privilege against self-incrimination. See also United States v. Euge, 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980); United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973) (compelled execution of hand writing exemplars of the various signatures appearing on signature cards for bank accounts held under aliases).
*157 In Davis v. Mississippi, 394 U.S. 721, 727, 89 S.Ct. 1394, 1398, 22 L.Ed.2d 676 (1969), the United States Supreme Court noted that "[f]ingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search." Clearly, then, fingerprints properly obtained would be admissible against any Fifth Amendment objections. See also Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) (forced taking of fingernail scrapings containing traces of skin and blood cells and fabric from the murder victim's nightgown).
In Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the United States Supreme Court affirmed the compelled production of accountant's work papers, holding that the Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the tax payer. See also Doe v. United States, 487 U.S. 201, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988); United States v. Doe, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); Andresen v. Maryland, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) (business records).
Florida courts have followed the federal case law in expanding the Schmerber rationale to other non-testimonial evidence. Wyche v. State, 536 So.2d 272 (Fla. 3d DCA 1988), rev. den., 544 So.2d 201 (1989) (fingerprinting); Macias v. State, 515 So.2d 206 (1987) (voice exemplars); Doe v. State, 409 So.2d 25 (Fla. 1st DCA 1981), rev. den., 418 So.2d 1280 (1982) (bullet removal); Lacey v. State, 239 So.2d 628 (Fla. 2d DCA 1970), cert. den., Lacey v. Florida, 401 U.S. 958, 91 S.Ct. 987, 28 L.Ed.2d 242 (1971) (handwriting exemplars); State v. Esperti, 220 So.2d 416 (Fla. 2d DCA 1969) (presence of nitrates, powder burns on hands); Cox v. State, 219 So.2d 762 (Fla. 3d DCA 1969) (lineups).
Although not within a custodial or testimonial context, the United States Supreme Court has upheld compelled self-identification within the context of certain regulatory schemes. In United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927), a bootlegger was prosecuted for failure to file an income tax return, but claimed that the privilege against compulsory self-incrimination afforded him a complete defense because filing a return would have tended to incriminate him by revealing the unlawful source of his income. Speaking for the court, Mr. Justice Holmes rejected such "an extreme if not extravagant" application of the Fifth Amendment. 274 U.S. at 263-264, 47 S.Ct. at 607-08. "If the form of the return provided called for answers that the defendant was privileged from making he could have raised the objection in the return, but could not on that account refuse to make any return at all." 274 U.S. at 263, 47 S.Ct. at 607.
More recently, in California v. Byers, 402 U.S. 424, 432, 91 S.Ct. 1535, 1540, 29 L.Ed.2d 9 (1971), the United States Supreme Court did note that the disclosure of name and address compelled by the California Vehicle Code was "an essentially neutral act." The purpose of the statute was to implement the state police power to regulate use of motor vehicles. The court concluded that:
A name linked with a motor vehicle is no more incriminating than the tax return, linked with disclosure of income ... it identifies but does not implicate anyone in criminal conduct ... although identity, when made known, may lead to inquiry that in turn leads to arrest and charge, those developments depend on different factors and independent evidence.
402 U.S. at 433-434, 91 S.Ct. at 1540-41.
In State v. Ecker, 311 So.2d 104 (Fla.), cert. denied sub nom., Bell v. Florida, 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975), the Supreme Court of Florida applied California v. Byers, supra, to hold that under circumstances where the public safety was threatened by an individual, no constitutional provision was violated by requiring credible and reliable identification. Here there was no safety threat involved.
Therefore, notwithstanding the fact that the state may be able to otherwise identify the accused, e.g. by way of lineup or fingerprint, the compelled verbal self-identification of a criminal suspect violates that suspect's constitutional right to remain silent. *158 "[O]ur accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth." Miranda v. Arizona, 384 U.S. 436, 460, 86 S.Ct. 1602, 1620, 16 L.Ed.2d 694 (1966).
NOTES
[1] A nolle prosequi was subsequently entered by the state on the grand theft charge.
[2] It appears from the record that defendant had been charged in several crimes in which misrepresentation of his true identity is a key element.
[1] Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).