700 So.2d 68 (1997)
Lloyd CHAMBERS, Appellant,
v.
STATE of Florida, Appellee.
No. 96-2647.
District Court of Appeal of Florida, Fifth District.
September 26, 1997.
*69 James E. Taylor, Jr., and Richard S. Rhodes, Orlando, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Robin A. Compton, Assistant Attorney General, Daytona Beach, for Appellee.
W. SHARP, Judge.
Chambers appeals from his convictions for trafficking in 28 grams or more of cocaine,[1] possession of cocaine,[2] and possession of cannabis over 20 grams.[3] He argues that the trial court erred by denying his motion to suppress the evidence of the contraband discovered under his foot, as well as in an Isuzu sport utility vehicle parked nearby, to which he had the car keys and its apparent possession. We affirm.
The key issue in this case is whether Chambers was "seized," in violation of his Fourth Amendment rights, before drugs were found on the ground where he had initially been standing while talking with the police officers. If not, then we think upon discovery of the cocaine on the ground, the police officers had probable cause to arrest Chambers and search him.[4] The search of Chambers' person led to the discovery of the Isuzu keys, which resulted in a search of the car and produced the balance of the contraband. The validity of the search of the Isuzu can be sustained either on the basis of Chamber's consent, or the inevitable discovery rule.[5]
Only two state witnesses testified at the suppression hearing, and one at trial, concerning the suppression issues. The same testimony was basically repeated at the trial. Officer Rivers testified that while on routine patrol, just after midnight, he observed several cars stopped at the corner of Tarpon and Smith Streets, in Kissimmee, Florida. It is an area well known to law enforcement and to Officer Rivers (who grew up in the neighborhood) as a "drug corner." Officer Rivers observed several men walking up to cars and engaging in some type of transaction or activity.
*70 When he drove by in his marked police car, the cars left. He parked his car, turned on his camera, and approached a group of seven to eight men standing on the corner. He advised them of the city ordinance against loitering and prowling. All but two, Chambers and another, walked away. Officer Rivers knew many of the residents in this area, but did not recognize Chambers or the other man. He inquired what they were doing there and asked to see their identification. Chambers told Officer Rivers that he had no probable cause to ask for his identification.
When Chambers refused to produce his identification, Officer Rivers called for back-up and Officer Calarco arrived. Chambers also told Officer Calarco there was no probable cause to ask for his identification. Chambers said, however, that if they called their supervisor he would show them his identification. After further discussion, Chambers stepped forward to give Officer Rivers his identification.
Officer Calarco flashed his light on the ground where Chambers had been standing. He immediately saw a square yellow baggie containing a hard substance, later identified as cocaine. Officer Calarco also testified he had earlier flashed his light on the ground when he arrived and had seen nothing. He testified that in his experience drug dealers often hide their contraband on the ground or in nearby bushes. The other individual was standing some three feet away from Chambers so Officer Calarco surmised Chambers had been standing on top of the baggie while talking with the police officers and had inadvertently revealed its presence when he stepped forward to hand his identification to Officer Rivers.
At that point, Chambers was placed under arrest for possession of cocaine. The officers searched Chambers and discovered a cellular telephone, a pager, $2,000.00 in cash, and keys to an Isuzu vehicle. An Isuzu was parked nearby. At first Chambers said the keys did not go with that vehicle; later he admitted they did. Officer Calarco asked Chambers if he had more cocaine baggies inside the vehicle. Chambers nodded "yes."
Since the police officers at that point had not given Chambers his Miranda[6] rights, these statements cannot be used to establish a basis to search the Isuzu. But these statements were not the basis for the search. Officer Calarco asked Chambers if he would consent to a search of the Isuzu. At first Chambers did not give consent. The officers called for the canine unit to respond. Chambers then consented to the search, knowing the canine unit had been called. A search of the vehicle disclosed the balance of the contraband involved in this case. The officers found a green canvas-type bag between the seats, which contained two razor blades, yellow plastic baggies of cocaine (packaged like the one found on the ground), and almost 500 grams of marijuana.
At first Chambers said the Isuzu belonged to his wife, Lynette. A check of the registration showed the vehicle was registered in the name of Chambers' mother, Juliette. Chambers was the sole person in charge of the Isuzu, as neither woman was in the area or the neighborhood.
On appeal, Chambers does not contest the legality of his initial stop. Rather, he contends the evidence adduced was insufficient to prove he possessed the baggie found at his feet, and his constructive possession of the contraband in the Isuzu. We think under the totality of the circumstances, the evidence was sufficient to link Chambers to the contraband, and to the vehicle.[7]
He also argues that his consent to the search of the Isuzu was invalid because it was a forced acquiescence in response to the officers' assertions of apparent authority. See Gadsden v. State, 498 So.2d 1339 (Fla. 2d DCA 1986). However, the testimony at the suppression hearing and at trial, as well as the video tape of the encounter, support the trial judge's conclusion that Chambers' consent was voluntary. It was given after being told not that the officers would search the *71 vehicle in any event, but rather that a canine unit had been called to establish probable cause to search. Had no alert been made on the Isuzu, the inference was no search would be made. This is not the same as the police saying a search was going to be made, even if Chambers refused. See Freeman v. State, 559 So.2d 295 (Fla. 1st DCA 1990).
However, we are concerned about the misconception in this case on the part of the police officers, evidenced by their testimony and the video tape, that they could compel Chambers to provide them with his identification papers. This court has held that a defendant's failure to cooperate by answering questions concerning his identity is not itself criminal conduct. See Robinson v. State, 550 So.2d 1186 (Fla. 5th DCA 1989). See also St. George v. State, 564 So.2d 152 (Fla. 5th DCA 1990).
But this point is not dispositive of this case. Mere police questioning does not by itself constitute a seizure. Even though officers have no basis to suspect an individual is involved in criminal behavior, they may generally ask questions, ask to see a person's identification, and request permission to search, without violating the Fourth Amendment. See Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); INS v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).
Whether a seizure has occurred within the meaning of the Fourth Amendment is whether, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. See Michigan v. Chesternut, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988); United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64. L.Ed.2d 497 (1980). It is an objective test, and not whether the person perceived his or her freedom was being restricted. Bostick. Examples of circumstances which might indicate a seizure had occurred would be the threatening presence of several police officers, the display of a weapon by an officer, some physical touching of the person, and/or use of language or tone of voice indicating compliance with an officer's request will be compelled. Absent such evidence, otherwise non-offensive contact between a member of the public and the police does not rise to a seizure of the person. See United States v. Mendenhall, 446 U.S. at 553, 100 S.Ct. at 1876; State v. Baldwin, 686 So.2d 682 (Fla. 1st DCA 1996).
Based on the testimony at the suppression hearing and the video tape, it appears that Officer Rivers mistakenly believed he had probable cause to stop Chambers, had Chambers elected to leave the initial encounter. But, Officer Rivers did not tell Chambers that, and there was no physical touching or show of force, or behavior like that described above. In fact Chambers said on the video that he could have walked away during their initial encounter. Chamber's dilemma was that he could not safely walk away because he was standing on, and thereby concealing, the baggie containing cocaine. Whether the baggie was revealed because Chambers elected to move away and discontinue the encounter, or because Chambers elected to produce identification, is immaterial because at the time Chambers moved his feet, he was not under arrest nor seized under the objective test of the Fourth Amendment.
AFFIRMED.
ANTOON, J., concurs.
THOMPSON, J., concurs in result only.
NOTES
[1] § 893.135(1)(b)1, Fla. Stat. (1995).
[2] § 893.13(6)(a), Fla. Stat. (1995).
[3] § 893.13(6)(a), Fla. Stat. (1995).
[4] See Cross v. State, 560 So.2d 228 (Fla. 1990); State v. Y.B., 659 So.2d 323 (Fla. 1st DCA 1994); Harris v. State, 641 So.2d 126 (Fla. 1st DCA 1994), rev. denied, 651 So.2d 1194 (Fla. 1995); State v. Brown, 616 So.2d 124 (Fla. 2d DCA 1993).
[5] See Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Paige v. State, 641 So.2d 179 (Fla. 5th DCA 1994); State v. Walton, 565 So.2d 381 (Fla. 5th DCA 1990); State v. Angel, 547 So.2d 1294 (Fla. 5th DCA 1989). See also State v. McLaughlin, 454 So.2d 617 (Fla. 5th DCA 1984).
[6] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[7] See Greene v. State, 625 So.2d 1293 (Fla. 5th DCA), cause dismissed, 630 So.2d 1099 (Fla. 1993); Ellis v. State, 528 So.2d 1327 (Fla. 5th DCA 1988).