NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA, )
)
)
Petitioner, )
)
v. ) Case No. 2D18-3535
)
RUBEN ALLEN JONES, )
)
Respondent. )
_____ )

Opinion filed November 1, 2019.

Petition for Writ of Certiorari to the Circuit
Court for the Tenth Judicial Circuit for Polk
County; sitting in its appellate capacity.

Ashley Moody, Attorney General,
Tallahassee, and Elba Martin-Schomaker,
Assistant Attorney General, Tampa; and
Brian W. Haas, State Attorney, Tenth
Judicial Circuit of Florida, and Victoria J.
Avalon, Assistant State Attorney, Bartow,
for Petitioner.

Philip Averbuck of Highland City, for
Respondent.

SALARIO, Judge.

Ruben Allen Jones has been charged in the county court with driving on a

suspended license. Relying on Florida's statutory accident-report privilege, section

316.066(4), Fla. Stat. (2017), the county court suppressed statements of identity Mr.

Jones made to police at the scene of an accident. The State took an appeal to the

circuit court, which affirmed the county court's order. The State now seeks review in

this court by way of second-tier certiorari of the circuit court's affirmance. Although the

rationale underlying the circuit court's decision is not entirely clear, under any

interpretation of its reasoning its affirmance departed from the essential requirements of

law and results in a miscarriage of justice. We therefore grant the State's petition.

I.

A.

It is helpful to know a little statutory background before diving into the

specifics of this case. Sections 316.062 and .066 impose a duty upon a driver involved

in an automobile accident involving damage to another vehicle to provide, among other

things, information that identifies the driver for use in preparing a crash investigation

report. See also State v. Marshall, 695 So. 2d 719, 721 (Fla. 3d DCA 1996). The legal

question in this case arose because the State wants to use a driver's statement of his

identity made pursuant to this statutory duty to give information relevant to an accident

in an otherwise unrelated criminal prosecution of the driver, who appears to have had

no valid driver's license when the accident happened. The answer derives in part from

section 316.066(4), which creates the accident-report privilege. It provides, in relevant

part, as follows:

> Except as specified in this subsection, each crash
> report made by a person involved in a crash and any
> statement made by such person to a law enforcement
> officer for the purpose of completing a crash report
> required by this section shall be without prejudice to
> the individual so reporting. Such report or statement

> may not be used as evidence in any trial, civil or criminal.  However, subject to the applicable rules of evidence, a law enforcement officer at a criminal trial may testify as to any statement made to the officer by the person involved in the crash if that person's privilege against self-incrimination is not violated.

§ 316.066(4) (emphasis added).  Under the statutory privilege, then, statements made by a person involved in a crash for purposes of completing a crash investigation report are generally inadmissible in any trial, subject to a specific exception that law enforcement officers can testify about such statements in criminal cases if doing so does not violate the person's privilege against self-incrimination.  See also Vedner v. State, 849 So. 2d 1207, 1213 (Fla. 5th DCA 2003).

B.

In this case, there was a multivehicle accident during which a car Mr. Jones was driving was rear-ended.  A deputy arrived at the scene and began a crash investigation.  He did not administer Miranda[1] warnings.  He asked Mr. Jones for his license.  Mr. Jones said he did not have one.  The deputy then asked for his name, date of birth, and social security number.  Mr. Jones complied.

The deputy used that identifying information to check on the Driver and Vehicle Information Database (DAVID) maintained by the Florida Department of Highway Safety and Motor Vehicles.  He learned that Mr. Jones's license had been revoked.  He asked Mr. Jones whether he knew that his license was revoked, and Mr. Jones responded affirmatively.  Mr. Jones was arrested and, after further questioning

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

not relevant here, charged with driving on a suspended license.  The case proceeded in the county court for Polk County.

Mr. Jones moved to suppress his statements of identity arguing, among other things, that their admission would violate his privilege against self-incrimination under the Fifth Amendment to the United States Constitution and the accident-report privilege under section 316.066(4).[2]  The State opposed the motion, arguing that under the Supreme Court's decision in California v. Byers, 402 U.S. 424 (1971), statements of identification made pursuant to a statutory duty to provide such information after an automobile accident are not subject to the privilege against self-incrimination.  It also argued that the statutory accident-report privilege did not apply because section 316.066(4) authorizes law enforcement officers to testify to any statement during a crash investigation so long as the privilege against self-incrimination is not violated.

At a hearing on the motion, Mr. Jones agreed with the State that under Byers, the Fifth Amendment did not require suppression of his statements of identity, telling the county court that "it's quite true that there's no Fifth Amendment right to remain silent at a traffic crash investigation."  He clarified that he was not basing Mr. Jones's argument on the Constitution but rather on the statutory accident-report privilege, asserting that the statute protects the constitutional privilege against self-incrimination in crash investigations by prohibiting statements made during such investigations in court.  He argued (1) that under the accident-report privilege, when a law enforcement officer "switches hats" from conducting an accident investigation to

---

[2]Mr. Jones also moved to suppress other statements made at the accident scene, but those statements are not at issue here.

conducting a criminal investigation, the driver must be Mirandized and (2) that the statute contains no exception for statements of identity.

The county court suppressed the statements. It expressly found that "at no time did [the deputy] 'change hats' and begin to conduct a criminal investigation." (Emphasis added.) But it nonetheless concluded that the statements should be suppressed:

> [T]he State has argued that the Defendant . . . "merely provided his identity" to [the deputy] and such is neither testimonial or incriminating under the Fifth Amendment. See California v. Byers, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed. 2d 9 (1971). Consistent with our Supreme Court's reasoning in Byers, the State argued that providing one's identity is not an incriminating statement and therefore should not be protected under the Accident Report Privilege. This court disagrees. The Accident Report Privilege is created by statute. Section 316.066(4), Florida Statutes, provides a privilege to individuals who are questioned by officers conducting an accident investigation, and the statute (after an amendment in 1989) does not provide an exception to this privilege for information given about identity if the identity of the driver is in question. State v. Evans, 692 So. 2d 305, 306 (Fla. 4th DCA 1997).

This passage seems to recognize that there is no constitutional self-incrimination problem with the admission of Mr. Jones's statement of identity under Byers and to hold that the statutory privilege under section 316.066(4) for statements made in connection with an accident investigation barred its admission. But the county court then said that "to allow [Mr. Jones] to be criminally prosecuted for Driving While License Suspended or Revoked based entirely upon information the Defendant was compelled to provide to law enforcement pursuant to a statutorily created duty, would render his constitutional privilege against self-incrimination meaningless."

C.

The State appealed to the circuit court. As it did in the county court, the State argued that under Byers, there is no self-incrimination issue in this case, and that section 316.066(4) authorizes law enforcement officers to testify as to statements made at the scene. Mr. Jones argued that Byers was irrelevant because his argument was based on section 316.066(4), which contains no exception for statements of identity.

The circuit court affirmed. In a written opinion, the circuit court first quoted in full the text of section 316.066(4) and then stated that the statute "prohibits a statement obtained during an accident investigation from being used as evidence in any trial." It concluded by stating that "the trial court properly relied on State v. Evans, 692 So. 2d 305, 306 (Fla. 4th DCA 1997), which found that there is no longer an exception to the privilege for statements made if the identity of the driver is in question." The court did not explicitly address any issue concerning the privilege against self-incrimination.

Because the Fourth District's decision in Evans was central to the circuit court's decision, it is important to understand what Evans says. Evans held that section 316.066(4) precluded the State from having a driver's statements of identity during an accident investigation admitted at trial. 692 So. 2d at 306. Its analysis of the question reads as follows:

> We affirm the trial court's order granting suppression of appellee's statements made at the scene of an automobile accident. Section 316.066(4), Florida Statutes (1993), as amended in 1989, provides for a privilege to individuals who are questioned by officers conducting an accident investigation. Contrary to the state's contention, there is no longer an exception to the privilege for statements made if the identity of the driver is in question.

Id. at 306 (emphasis added). The decision in Evans did not say that the admission of a statement of identity made at the scene of an accident during an accident investigation violates the privilege against self-incrimination.

II.

The State has timely petitioned this court for a writ of certiorari quashing the circuit court's decision. "When reviewing a decision of a circuit court sitting in its appellate capacity, the district court of appeal is limited to determining whether the circuit court afforded procedural due process and observed the essential requirements of law." Snyder v. City Council of Palmetto, 902 So. 2d 910, 912 (Fla. 2d DCA 2005). The State does not assert that the circuit court failed to afford procedural due process, and our review is thus "restricted to those errors that 'depart from the essential requirements of law.' " Nader v. Fla. Dep't of Hwy. Safety & Motor Vehicles, 87 So. 3d 712, 722 (Fla. 2012). A circuit court departs from the essential requirements of law when it violates a "clearly established principle of law," which can come from the circuit court's "interpretation or application of controlling case law, statutes, procedural rules, or constitutional provisions." Daniels v. Sorriso Dental Studio, LLC, 164 So. 3d 778, 781 (Fla. 2d DCA 2015) (quoting Allstate Ins. Co. v. Kaklamanos, 843 So. 2d 885, 889 (Fla. 2003)); see also Miami-Dade County v. Omnipoint Holdings, Inc., 863 So. 2d 195, 199 (Fla. 2003) ("A ruling constitutes a departure from the essential requirements of law when it amounts to 'a violation of a clearly established principle of law resulting in a miscarriage of justice.' " (quoting Tedder v. Fla. Parole Comm'n, 842 So. 2d 1022, 1024 (Fla. 1st DCA 2003))).

Determining whether the circuit court departed from the essential requirements of law requires that we first identify what the circuit court held so that we can evaluate its reasoning under the proper standard.  See Custer Med. Ctr. v. United Auto. Ins. Co., 62 So. 3d 1086, 1094 (Fla. 2010) (quashing decision granting second-tier certiorari and emphasizing that the district court "neither clarified what the circuit court held below nor did it analyze or address why this holding departed from the essential requirements of the law").  That task is complicated here because the county court's order, which the circuit court affirmed, seems to say both (1) that the statutory accident-report privilege contains no exception for statements of identity as described in Evans and (2) that the privilege against self-incrimination precludes the admission of Mr. Jones's statements.  The parties' filings in this court also suggest that both issues are in play.  Although we think that the circuit court's opinion is most naturally read as affirming on the basis of the accident-report privilege and Evans, these circumstances make it necessary to consider both possible grounds in deciding whether any error constitutes a departure from the essential requirements of law resulting in a miscarriage of justice.  Cf. City of Miami v. Hagan, 235 So. 3d 977 (Fla. 3d DCA 2017) (reviewing two grounds implicated by a circuit court order and second-tier cert petition and finding both departed from the essential requirements of law).

A.

We turn first to the self-incrimination issue because its resolution has a bearing on the application of the statutory accident-report privilege.

As Mr. Jones conceded in the county court, the Supreme Court's decision in Byers resolved any self-incrimination issue here in the State's favor.  Byers involved a

California statute that required the driver of a vehicle involved in an accident resulting in property damage to stop and provide his or her name and address to the driver and owner of the other vehicle. 402 U.S. at 426. A defendant charged with a violation of that statute argued that the compelled disclosure of his identity violated his privilege against self-incrimination under the Fifth Amendment because his provision of that information tended to show that he committed the misdemeanor offense of failing to maintain a safe distance, with which he was also charged. Id. at 425-26.

The Supreme Court held that the defendant's disclosure of his identity did not violate the Fifth Amendment. Id. at 434, 458. A four-justice plurality reasoned that the statutorily-compelled disclosure of a driver's identity at an accident scene does not violate the privilege against self-incrimination because (1) the disclosure is not incriminating in that there is nothing inherently suspect about being in a traffic accident and (2) the disclosure is not testimonial because the disclosure of identity is a neutral act. Id. at 430-34. A fifth justice concurred in the judgment, reasoning that the State's interest in compelling disclosure not for purposes of criminal prosecution but to ensure financial responsibility for automobile accidents did not trench on the purposes of the Fifth Amendment. Id. at 458 (Harlan, J., concurring) ("Considering the noncriminal governmental purpose in securing the information, the necessity for self-reporting as a means of securing the information, and the nature of the disclosures involved, I cannot say that the purposes of the Fifth Amendment warrant imposition of a use restriction as a condition on the enforcement of this statute.").

Although there is a split on the reasoning, Byers provides us with a clear holding from a superior court that the compelled disclosure of a driver's identity at an

accident scene pursuant to a reporting statute does not violate the privilege against self-incrimination.[3]  See Marks v. United States, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .' " (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15 (1976))); cf. United States v. Hubbell, 530 U.S. 27, 35 (2000) (citing Byers for the proposition that "the fact that incriminating evidence may be the byproduct of obedience to a regulatory requirement, such as . . . reporting an accident, does not clothe such required conduct with the testimonial privilege" (footnotes omitted)).  And no one—not Mr. Jones, not the county court, and not the circuit court—has shown that the California statute requiring the disclosure of a driver's identity in Byers is distinguishable from the disclosure of identity required by sections 316.062 and .066 in any way that matters.  There is good reason for that omission; the statutes are not distinguishable in any material respect.  See Sylvester v. State, 557 So. 2d 180, 182 (Fla. 3d DCA 1990) (relying on Byers to hold

_____

[3]Mr. Jones's motion also cited article I, section 9 of the Florida Constitution, which contains a privilege against self-incrimination.  However, he has never argued, with respect to the matters at issue here, how that privilege is different in any material respect from the one established by the Fifth Amendment to the U.S. Constitution.  Compare State v. Horwitz, 191 So. 3d 429, 438 (Fla. 2016) (explaining in a case involving the privilege against self-incrimination that unless the Florida Constitution states otherwise, the Florida Supreme Court is the "ultimate arbiter" of whether state constitutional rights are broader than those conferred by analogous provisions of the federal constitution), with St. George v. State, 564 So. 2d 152, 154-55 (Fla. 5th DCA 1990) (analyzing questions concerning disclosure of identity under the Fifth Amendment and article I, section 9 in the same way).  Mr. Jones conceded in the trial court that because of Byers' application of the Fifth Amendment to similar facts, there was no constitutional self-incrimination issue here at all.  Neither the county nor the circuit court relied on any difference between the federal or state constitutions.  As far as this case is concerned, then, Fifth Amendment precedents are dispositive.

that a driver's disclosure of her identity for purposes of completing an accident report under section 316.066 did not violate the privilege against self-incrimination).

We recognize, as Mr. Jones points out, that several cases discussing the interplay between the statutory accident-report privilege and the privilege against self-incrimination hold that a suspect should be Mirandized when the police cease the crash investigation required by statute and "changes hats" to begin a criminal investigation. See State v. Norstrom, 613 So. 2d 437, 439-40 (Fla. 1993) (holding that statements made after police "changed hats" and began conducting a criminal investigation were admissible because Miranda warnings were administered); State v. Shepard, 658 So. 2d 611, 612 (Fla. 2d DCA 1995) (explaining that reading Miranda rights resolves any self-incrimination problem regardless of whether the statements were made during an accident or criminal investigation); Marshall, 695 So. 2d at 720-21 (denying the State's second-tier certiorari petition where an officer began conducting a criminal investigation but failed to read Miranda warnings). The concept appears to be rooted in the notion that section 316.066(4) creates a privilege for statements a person is compelled by statute to make during the accident investigation but not for statements made after the accident investigation is over and the criminal investigation begins, such that a person needs to be advised of his right to remain silent once the criminal investigation begins. See Marshall, 695 So. 2d at 721. As a factual matter, however, in this case we have a finding from the county court that was undisturbed on appeal in the circuit court that the deputy who conducted the accident investigation never began conducting a criminal investigation. And as a legal matter, none of these cases hold that the switching-hats concept is implicated by giving identifying information at an accident scene pursuant to

a statutory duty to provide it for purposes of a crash investigation.  In contrast, that issue is raised by this case, and <u>Byers</u> holds that the resulting disclosure of identifying information does not violate the privilege against self-incrimination.

To the extent the circuit court affirmed a self-incrimination holding, then, it did more than merely misapply a controlling opinion to the facts.  <u>Cf.</u> <u>Haines City Cmty. Dev. v. Heggs</u>, 658 So. 2d 523, 525 (Fla. 1995) ("A decision made according to the form of law and the rules prescribed for rendering it, although it may be erroneous in its conclusion as to what the law is as applied to facts, is not an illegal or irregular act or proceeding remediable by certiorari." (quoting <u>Basnet v. City of Jacksonville</u>, 18 Fla. 523, 526-27 (1882))).  Instead, it failed to consider or apply a controlling decision— <u>Byers</u>—at all.  The failure to apply a controlling legal decision is a classic departure from the essential requirements of the law.  <u>See, e.g.</u>, <u>Dep't of Hwy. Safety & Motor Vehicles v. Hofer</u>, 5 So. 3d 766, 772 (Fla. 2d DCA 2009) (holding that a circuit court departed from the essential requirements of the law when it failed to apply a legal rule set forth by a Supreme Court decision); <u>Dep't of Hwy. Safety & Motor Vehicles v. Walsh</u>, 204 So. 3d 169, 171 (Fla. 1st DCA 2016) (describing a circuit court's failure to follow a binding precedent as "a clear departure from the essential requirements of law"); <u>Dep't of Hwy. Safety & Motor Vehicles v. Clay</u>, 152 So. 3d 1259, 1260 (Fla. 5th DCA 2014) (holding that a circuit court departed from the essential requirements of law when it failed to follow binding precedent).  Had it applied <u>Byers</u>, the circuit court could not have affirmed the county court on self-incrimination grounds.

B.

We turn now to the more explicit basis for the circuit court's holding—that statutory accident-report privilege categorically precludes admission of statements of identity because section 316.066(4) contains no exception for statements of identity.[4] As quoted earlier, section 316.066(4) generally makes statements made by a person involved in a crash inadmissible in a civil or criminal trial, except that "a law enforcement officer at a criminal trial may testify as to any statement made to the officer by the person involved in the crash if that person's privilege against self-incrimination is not violated."  This language is not ambiguous, and it provides that "any" such statement is admissible (1) in a criminal trial, (2) if testified to by a law enforcement officer, (3) about a statement made to the law enforcement officer by a person involved in the crash, (4) if that person's privilege against self-incrimination is not violated.  See also Vedner, 849 So. 2d at 1213 (noting that section 316.066(4) "specifically permits a law enforcement officer to testify in a criminal trial about statements made to the officer by a person involved in a crash, provided the person's privilege against self-incrimination is not implicated"); Marshall, 695 So. 2d at 722 (stating that the exception applies to statements by a reporting person to a law enforcement officer that are not protected by the privilege against self-incrimination).  Like the Fifth District, "we believe it is obvious"

---

[4]After this case was submitted, our court rendered an opinion explaining that the accident-report privilege is not a true privilege precluding the disclosure of information, but rather it is a limitation on the admissibility of evidence.  Anderson v. Mitchell, 44 Fla. L. Weekly D899 (Fla. 2d DCA Apr. 5, 2019).  This understanding of the statute raises potential questions concerning whether a motion to suppress (as distinguished from a motion in limine or objection at trial) is the appropriate vehicle in which to raise and have a trial court address these issues and whether the statute permits exclusion of anything other than a driver's statements at a crash scene.  Neither question is in play in this proceeding, however, and we express no opinion about them.

- 13 -

that the privilege against self-incrimination in section 316.066(4) is "co-extensive with the constitutional privilege against self-incrimination." State v. Cino, 931 So. 2d 164, 168 (Fla. 5th DCA 2006).

Applying the unambiguous language of the statute to this case, the deputy is allowed to testify about Mr. Jones's statements of identity at trial. The trial is criminal; the testimony would be provided by a law enforcement officer; the testimony would be about a statement made to the officer by a person involved in the crash; and, as we have shown, there is no violation of the privilege against self-incrimination.

That the privilege section 316.066(4) creates contains no exception for statements of identity, as the circuit court reasoned, is beside the point. Granted, section 316.066(4) does not exclude statements of identity from its general ban on admitting privileged statements at trial. But neither does it exclude statements of identity from its specific exception for testimony by law enforcement officers in criminal trials. So long as the requirements of the statutory exception are met, the plain language of the statute means that statements of identity come in just like any other statement by a person involved in a crash. Because that is true, the circuit court could have held that the absence of a statutory exclusion for statements of identity required the suppression of Mr. Jones's statements only by using a metaphorical red pen to write the exception for testimony by law enforcement officers out of the statute entirely. Of course, that is not something the circuit court enjoyed any latitude to do. See Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984) (explaining that courts are "without power to construe an unambiguous statute in a way which would extend, modify, or *limit*[] its

- 14 -

express terms" (quoting Am. Bankers Life Assurance Co. of Fla. v. Williams, 212 So. 2d 777, 778 (Fla. 1st DCA 1968))).

It is well-established that a circuit court's failure to apply the unambiguous language of a statute is a departure from the essential requirements of the law. See Gonzalez v. State, 15 So. 3d 37, 39 (Fla. 2d DCA 2009) ("A departure from the essential requirements of law, alternatively referred to as a violation of clearly established law, can be shown by a misapplication of the plain language in a statute."); Justice Admin. Comm'n v. Peterson, 989 So. 2d 663, 665 (Fla. 2d DCA 2008) ("When the circuit court does not apply the plain and unambiguous language of the relevant statute, it departs from the essential requirements of law."). And the fact that the circuit court here found support for its decision in the Fourth District's Evans opinion does not make it any less of a departure. Our supreme court has held that although circuit courts are "bound to apply existing precedent from another district if its district has not yet spoken on the issue," the circuit court's use of such precedent creates a departure from the essential requirements of the law if "the circuit court followed binding precedent from another district that was clearly contrary to the plain language of the statute itself." Nader, 87 So. 3d at 724, 726; cf. Bowers v. State, 23 So. 3d 767, 771 (Fla. 2d DCA 2009) (finding a departure permitting second-tier certiorari relief where the circuit court relied on Fourth Amendment precedent from another district that "misapplied" the law and "should be rejected"). To the extent Evans held that section 316.066(4) bars the admission of statements of identity merely because it contains no exception for such

statements, it too failed to follow the unambiguous language of the statute and departed from the essential requirements of law.[5]  See Nader, 87 So. 3d at 726.

### III.

Having established that the circuit court's decision (regardless of how one interprets it) departs from the essential requirements of law, we must still consider whether it results in a miscarriage of justice.  This standard is necessarily demanding— after all, second-tier certiorari is not intended to be a routine second appeal of county court decisions—but it also involves "a degree of flexibility and discretion" that cannot be reduced to a "catalog" of factors for courts to consider in every case.  See Heggs, 658 So. 2d at 530-31; see also Custer, 62 So. 3d at 1092-93.  The decision to grant or withhold relief by way of second-tier certiorari largely depends on our "assessment of the gravity of the error and the adequacy of other relief."  Custer, 62 So. 3d at 1092 (quoting Heggs, 658 So. 2d at 531 n.14).

In making that decision, we have often considered whether the circuit court decision is "isolated in its effect," in which there may not be a miscarriage of

---

[5]Evans might have reached the result it did by relying on a superseded version of the statute.  Although Evans cites the 1993 version of section 316.066(4), it also explicitly states that it was looking specifically at the 1989 amendments to the statute.  Evans, 692 So. 2d at 306 ("Section 316.066(4), Florida Statutes (1993), as amended in 1989, provides for a privilege to individuals who are questioned by officers conducting an accident investigation." (emphasis added)).  Before 1989, the statute did not contain the exception present in the current version (and in 1993) for testimony by law enforcement officers in criminal trials; it did, however, contain an exception for statements of identity when identity was at issue.  See § 316.066(4), Fla. Stat. (1988).  The legislature removed the exception for statements of identity in 1989.  See § 316.066(4), Fla. Stat. (1989).  But it did not add the exception for testimony by law enforcement officers in criminal trials until 1991.  See § 316.066(4), Fla. Stat. (1991).  To the extent the Fourth District was looking solely at the 1989 amendments, its analysis would not have accounted for the addition in 1991 of an exception for testimony by law enforcement officers.

- 16 -

justice, or "whether it is pervasive or widespread in its application to numerous other proceedings," in which case there may well be.  Dep't of Hwy. Safety & Motor Vehicles v. Alliston, 813 So. 2d 141, 145 (Fla. 2d DCA 2002); see also Progressive Express Ins. Co. v. McGrath Cmty. Chiropractic, 913 So. 2d 1281, 1287 (Fla. 2d DCA 2005) (concluding that the circuit court's erroneous decision will result in a miscarriage of justice because it "will have great influence" given that it "has the potential to be applied not only in PIP cases, but also in mortgage foreclosure cases").  This case involves a decision that is likely pervasive and widespread in its effects.  The circuit court held that statements of identity made at an accident scene are categorically inadmissible under the statutory accident-report privilege (or possibly that Byers does not control whether such statements are subject to the privilege against self-incrimination).  This is a legal holding that applies across cases, not one that we can paint into a box on the facts.  Cf. Alliston, 813 So. 2d at 145 ("[A] circuit court order that is particularly fact-specific and fact-dependent . . . will generally not merit certiorari review in the district court, even if the district court might disagree with the result.").

If this legal error goes uncorrected, county courts in the Tenth Circuit hearing a criminal case involving statements of identity at a crash scene will be bound to apply the circuit court's holding.  See Fieselman v. State, 566 So. 2d 768, 770 (Fla. 1990).  According to the brief Mr. Jones filed in the circuit court, this is not the first time the Tenth Circuit sitting as an appellate court has made this same error.  As such, we should grant relief because a circuit court's creation of a principle of general application that is clearly wrong but binding on the county courts is the kind of situation our precedents regard as giving rise to a miscarriage of justice.  See, e.g., Gould v. State,

- 17 -

974 So. 2d 441, 446-47 (Fla. 2d DCA 2007) (finding a miscarriage of justice where the circuit court established a "general principle" of law that "is binding on all three county courts within the [circuit]"); McGrath Cmty. Chiropractic, 913 So. 2d at 1287 (finding a miscarriage where "the circuit court's decision had the potential to be applied in future . . . proceedings"); cf. Maple Manor, Inc. v. City of Sarasota, 813 So. 2d 204, 207 (Fla. 2d DCA 2002) (finding a miscarriage where the error "has the potential to be applied to future administrative nuisance abatement proceedings").

Of course, whether a departure is pervasive or isolated in its effects is only "one consideration" in determining whether there has been a miscarriage of justice. Alliston, 813 So. 2d at 145. The district courts of appeal have also found miscarriages of justice in circumstances where the circuit court's decision fails entirely to apply a binding precedent,[6] where the circuit court's decision is profoundly wrong as a matter of statutory construction,[7] and in a criminal prosecution, where the circuit court's decision leaves the State entirely unable to pursue its case and without any other avenue for seeking relief.[8] Independent of whether the circuit court's error is pervasive or limited in

---

[6]See, e.g., Walsh, 204 So. 3d at 173 (finding a miscarriage in such circumstances even where "the likelihood of another court committing a similar error . . . is speculative").

[7]See, e.g., Progressive Am. Ins. Co. v. SHL Enters., LLC, 264 So. 3d 1013, 1017-18 (Fla. 2d DCA 2018) (concluding under second-tier certiorari review standards that the court departed from the essential requirements of law by erroneously construing the express language of the relevant statute and that the result was a manifest injustice in derogation of that express statutory language).

[8]See, e.g., State v. Hamilton, 210 So. 3d 776, 779 (Fla. 2d DCA 2017) (holding that the violation of a clearly established principle of law was a miscarriage of justice on the bases (1) that the circuit court had "impermissibly infringed on the county court's lawful exercise of its jurisdiction" and (2) that "it wholly negated the State's ability to proceed with its prosecution and left the State with no other avenue for review").

its effects, this case fits squarely within boundaries that these precedents have recognized as involving a miscarriage of justice. It involves either an utter failure to apply governing precedent or an egregious error in interpreting a statute. And according to the State—without contradiction by Mr. Jones—the suppression of Mr. Jones's statements of identity leaves it unable to proceed with this prosecution. There is more than enough here to justify us exercising our discretion and granting the writ on these bases. And in that regard, we note that this is not the first time a district court of appeal has granted the State's petition for second-tier certiorari when a trial court has misinterpreted section 316.066(4)'s accident-report privilege. See Cino, 931 So. 2d at 169 (granting the State's second-tier certiorari petition where "the circuit court departed from the essential requirements of the law by reading the accident report privilege significantly more broadly than permitted by the express language of the statute or by clear legal precedent interpreting the statute").

## IV.

Whether one interprets the circuit court's opinion as involving either (or both) the accident-report privilege or the privilege of self-incrimination, it departs from the essential requirements of law. These errors rise to a miscarriage of justice, and our precedents vest us with the discretion to fix it. Accordingly, we grant the petition, quash the circuit court's opinion, and certify conflict with Evans.

Petition granted; conflict certified.

LaROSE and BADALAMENTI, JJ., concur.

- 19 -