913 So.2d 1281 (2005)
PROGRESSIVE EXPRESS INSURANCE COMPANY, Petitioner,
v.
McGRATH COMMUNITY CHIROPRACTIC, f/k/a Naples Community Chiropractic, as assignee of Abner Joseph, Respondent.
No. 2D05-1497.
District Court of Appeal of Florida, Second District.
November 18, 2005.
*1283 Valeria Hendricks of Davis & Harmon, P.A., Tampa, for Petitioner.
Jack C. Morgan III of Morgan Law Firm, P.A., Fort Myers, for Respondent.
WALLACE, Judge.
Progressive Express Insurance Company (Progressive) seeks second-tier certiorari review of the appellate decision of the Twentieth Judicial Circuit reversing the Lee County Court's final judgment dismissing a small claims action filed by McGrath Community Chiropractic (the Provider). We grant Progressive's certiorari petition.

BACKGROUND
In May 2001, the Provider filed a small claims action against Progressive in the Lee County Court. The Provider sought the recovery of PIP benefits allegedly assigned to it by Abner Joseph under a policy of insurance issued by Progressive to Mr. Joseph. The Provider alleged in its statement of claim that the policy provided personal injury benefits and/or medical payments coverage and that the policy was required by law to comply with the Florida Motor Vehicle No-Fault Law, sections 627.730-.7405, Florida Statutes (1999) (the No-Fault Law). The Provider alleged further that it had "accepted, from ABNER JOSEPH, a written and/or equitable assignment of rights under the policy." However, the Provider did not attach a copy of a written assignment to its statement of claim.
Later, the Provider amended its statement of claim by attaching to it an "Assignment of Benefits Form" assigning to the Provider benefits payable under the policy for services rendered by the Provider. The form also authorized Progressive to pay such benefits directly to the Provider. The form bore the signature "Abner Joseph" and was dated January 8, 2002, more than six months after the action had been filed.
Progressive moved for a summary disposition in its favor on the ground that the Provider had no standing to file the action. The county court agreed with Progressive. It ruled as follows:
[T]here was no Assignment of Benefits, from Abner Joseph to the [Provider], either written or equitable, in existence at the time the [Provider] filed this lawsuit in May, 2001. Therefore, the [Provider] lacked standing to file suit at the time the original complaint was filed. The [Provider] cannot now assert standing based upon a questionable assignment of benefits that came into existence many months after the filing of the original complaint. Therefore, this Court lacks subject matter jurisdiction to hear this claim. . . .
Based on this ruling, the county court dismissed the Provider's action.
The Provider appealed the dismissal of its action to the circuit court. A panel of three circuit judges heard the appeal. With one judge dissenting, the circuit court reversed the county court's dismissal of the action and remanded the case for further proceedings. Progressive timely filed its petition for writ of certiorari in this court seeking review of the circuit court's appellate decision.

*1284 THE STANDARD OF REVIEW
In considering a petition for second-tier certiorari, we do not provide the parties with an opportunity for a second appeal. Instead, we may grant such a petition only in "those instances in which the lower court did not afford procedural due process or departed from the essential requirements of the law." Hous. Auth. v. Burton, 874 So.2d 6, 8 (Fla. 2d DCA 2004) (citing Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla.2003)). "A failure to observe `the essential requirements of law' has been held synonymous with a failure to apply `the correct law.'" Id. (citing Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 530 (Fla.1995)). In this case, Progressive does not claim that the circuit court's appellate decision deprived it of procedural due process. Therefore, we may not grant relief unless we determine that the circuit court departed from the essential requirements of law with a resulting miscarriage of justice. Ivey v. Allstate Ins. Co., 774 So.2d 679, 682 (Fla. 2000); Combs v. State, 436 So.2d 93, 95-96 (Fla.1983).

DISCUSSION

A. The Applicability of the "Relation Back" Rule
The Provider did not attach a copy of a written assignment of benefits to its original statement of claim filed in May 2001. To a subsequently filed amended statement of claim, the Provider attached a copy of the Assignment of Benefits Form dated January 8, 2002. The circuit court held that the written assignment related back to the date of the original statement of claim under Florida Rule of Civil Procedure 1.190(c).[1] The circuit court reasoned: "A plaintiff can perform a condition precedent to the filing of a complaint after the complaint is filed provided the plaintiff amends the complaint to allege the condition within the time allowed by the statute of limitations." As authority, the circuit court cited Holding Electric, Inc. v. Roberts, 530 So.2d 301 (Fla.1988).
In Holding Electric, Inc., the "condition precedent" to maintaining the action was the statutory requirement that a contractor seeking to foreclose a construction lien must first serve a contractor's affidavit. Id. at 302. The Supreme Court of Florida held that failure to serve the contractor's affidavit before filing the action was not a fatal jurisdictional defect requiring dismissal of the action. Instead, the contractor could satisfy the statutory prerequisite after filing the original complaint but before filing an amended complaint pleading compliance with the statute. Thus the contractor would be permitted to continue the action provided the affidavit was served within the statutory limitations period. Id. at 303.
A claimant's standing to bring an action is distinct from questions arising from the claimant's noncompliance with one or more conditions precedent to maintaining the action. For example, in Voges v. Ward, 98 Fla. 304, 123 So. 785 (1929), the plaintiff held only one of twelve notes necessary to the replevin of the collateral under a conditional sales contract when the action for replevin was filed. Although the plaintiff acquired all of the notes before the suit was tried, the trial court ruled that the suit was prematurely brought. The supreme court affirmed the trial court's ruling on this point, explaining that *1285 "the general rule in actions at law is that the right of a plaintiff to recover must be measured by the facts as they exist [sic] when the suit was instituted." Id. at 793 (citing Cobbey on Replevin § 257 (2d ed.1900); 1 C.J. 1149). Similarly, in Marianna & B.R. Co. v. Maund, 62 Fla. 538, 56 So. 670 (1911), a landowner sought to recover for permanent damages to land committed by a railroad company. Id. at 670-71. The landowner did not expressly plead or offer proof that the damages occurred before the landowner acquired his ownership interest in the property. Id. at 672. After he filed suit against the railroad, the landowner obtained an assignment of the claim for damages to the property from the former owner and alleged the fact of the assignment in an amended pleading. Id. at 671. The trial court entered a decree in favor of the landowner, and the railroad appealed. Id. at 671-72. The Supreme Court of Florida reversed the decree and remanded the case to the trial court with directions to dismiss the landowner's case without prejudice. Id. at 673. In explaining its decision, the court said:
[I]t is obvious [the landowner] has not clearly shown a right of action when the suit was brought on the 24th of March, 1910, under the assignment of the right to sue executed on January 5, 1911. That assignment gave a new right of action long subsequent to the date of the bringing of the suit. It is decided in this state that in ejectment a plaintiff cannot recover upon a deed made after the suit is brought. We know of no reason why the same principle should not apply to a case like the instant one.
Id. at 672 (citations omitted). As these cases demonstrate, the plaintiff's lack of standing at the inception of the case is not a defect that may be cured by the acquisition of standing after the case is filed.
Unlike a statutory requirement of the construction lien law, an assignment of PIP benefits concerns the claimant's standing to bring the action. "Standing is... that sufficient interest in the outcome of litigation which will warrant the court's entertaining it." Gen. Dev. Corp. v. Kirk, 251 So.2d 284, 286 (Fla. 2d DCA 1971). At any one time, only the insured or the medical provider "owns" the cause of action against the insurer for PIP benefits. Oglesby v. State Farm Mut. Auto. Ins. Co., 781 So.2d 469, 470 (Fla. 5th DCA 2001). For a medical provider to bring an action for PIP benefits, the insured must assign his or her right to such benefits under the policy to the medical provider.
Thus the assignment of PIP benefits is not merely a condition precedent to maintain an action on a claim held by the person or entity who filed the lawsuit. Rather, it is the basis of the claimant's standing to invoke the processes of the court in the first place. If the insured has assigned benefits to the medical provider, the insured has no standing to bring an action against the insurer. Livingston v. State Farm Mut. Auto. Ins. Co., 774 So.2d 716, 718 (Fla. 2d DCA 2000). In this case, the converse is true. If on the date the Provider filed the original statement of claim Mr. Joseph had not assigned benefits to the provider, only Mr. Joseph had standing to bring the action. It follows that the Provider would have lacked standing under these circumstances, and the case should have been dismissed.
In relying exclusively on the "relation back" rule when considering the Provider's standing, the circuit court implicitly affirmed the county court's finding that the Provider did not possess an assignment of benefits when it filed the action. In other words, the Provider was without standing at the time it filed the action, but it offered proof that it acquired standing in *1286 the amended statement of claim, which purportedly related back to the original statement of claim. Rule 1.190(c) provides:
Relation Back of Amendments. When the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment shall relate back to the date of the original pleading.
This rule does not permit a party to establish the right to maintain an action retroactively by acquiring standing to file a lawsuit after the fact. In this case, if the Provider was without standing when the action was filed, the PIP action was at best premature. See Livingston, 774 So.2d at 717. A new lawsuit must be filed. See Jeff-Ray Corp. v. Jacobson, 566 So.2d 885, 886 (Fla. 4th DCA 1990) (holding that the assignee of a mortgage could not maintain the mortgage foreclosure action because the assignment was dated four months after the action was filed; if the plaintiff wished to proceed on the assignment, it must file a new complaint). In relying on rule 1.190(c) and the "relation back" rule to cure the Provider's lack of standing when it filed the original complaint, the circuit court applied the incorrect law.

B. The Miscarriage of Justice Question
Our conclusion that the circuit court applied the incorrect law requires us to address the separate issue of whether this error has resulted in a miscarriage of justice. In Department of Highway Safety & Motor Vehicles v. Alliston, 813 So.2d 141 (Fla. 2d DCA 2002), this court offered the following perspective on the "miscarriage of justice" element:
The more difficult question in this case is whether the circuit court's error rises to the level that can be corrected as a "miscarriage of justice." Despite all of the efforts of the supreme court and the district courts, the test to determine when a "miscarriage of justice" has occurred remains easier to state than to apply. In measuring the seriousness of an error to determine whether second-tier certiorari is available, one consideration is whether the error is isolated in its effect or whether it is pervasive or widespread in its application to numerous other proceedings. Thus, a circuit court order that is particularly fact-specific and fact-dependent, or an order that provides a result without a written opinion and therefore cannot act as precedent in future cases, will generally not merit certiorari review in the district court, even if the district court might disagree with the result.
Id. at 145 (citations omitted). The facts in Alliston and two of this court's other decisions provide some guidance pertinent to the facts of this case in determining whether a miscarriage of justice has occurred.
In Alliston, we determined that the circuit court had applied the incorrect law in its review of an administrative order involving a license suspension. Id. at 144-45. We held that the circuit court's order qualified as a miscarriage of justice requiring certiorari relief because the order had precedential value and the circuit court was "applying the same error to numerous other administrative proceedings involving the suspension of driver's licenses." Id. at 145. In Maple Manor, Inc. v. City of Sarasota, 813 So.2d 204 (Fla. 2d DCA 2002), we decided that the circuit court had incorrectly applied the law by ruling that a local board had afforded a property owner procedural due process in an administrative proceeding. Id. at 207. Because the circuit court's decision had the potential to be applied in future administrative proceedings conducted by the local board, we *1287 concluded that the circuit court's error resulted in a miscarriage of justice. Id. At the other end of the spectrum, we found no violation of a clearly established principle of law resulting in a miscarriage of justice in a circuit court's per curiam affirmance of a county court judgment. Stilson v. Allstate Ins. Co., 692 So.2d 979 (Fla. 2d DCA 1997). In Stilson, the circuit court's per curiam decision could not serve as precedent in another proceeding. Id. at 980.
The Provider argues that even if the circuit court applied the incorrect law, its decision has not resulted in a miscarriage of justice in this case. In the Provider's view, this "is a fact-specific and fact-dependent case with distinguishable facts from other similar cases seeking the repayment of personal injury protection benefits." We disagree. The circuit court's decision establishes a rule of general application concerning the relation back of amended pleadings to remedy the claimant's lack of standing when an action is filed. This rule has the potential to be applied not only in PIP cases, but also in mortgage foreclosure cases where assignments are common. We are aware that PIP issues are heavily litigated in the county courts. Cf. State v. Wilson, 690 So.2d 1361, 1365 (Fla. 2d DCA 1997) (Altenbernd, J., dissenting) (noting that county courts are now resolving almost all PIP claims). The circuit court appellate decision in this case is binding on all five county courts within the Twentieth Judicial Circuit. See Fieselman v. State, 566 So.2d 768, 770 (Fla.1990); State v. Lopez, 633 So.2d 1150, 1150 (Fla. 5th DCA 1994). As a result, the circuit court appellate decision will have great influence, thus exacerbating the effect of the legal error. For these reasons, we conclude that the circuit court's decision does result in a miscarriage of justice that warrants the exercise of our certiorari jurisdiction.

CONCLUSION
Accordingly, Progressive's petition for writ of certiorari is granted, the circuit court's decision is quashed, and this case is remanded to the circuit court for further proceedings consistent with this opinion.
FULMER, C.J., Concurs.
DAVIS, J., Concurs specially.
DAVIS, Judge, Specially concurring.
I concur fully in the majority opinion. I write only to note that the record reveals the existence of an issue of fact concerning whether Mr. Joseph had equitably assigned PIP benefits to the Provider before the Provider filed the original statement of claim in May 2001. Both the county court and the circuit court apparently overlooked this fact issue in considering the Provider's claim.
In the original statement of claim, the Provider alleged that it had "accepted, from ABNER JOSEPH, a written and/or equitable assignment of rights under the policy." Based on this allegation, the Provider's failure to attach a formal, written assignment to its statement of claim was not fatal. While I do not condone the use of the justly-condemned expression "and/or" in pleadings,[2] the claim's allegation that the Provider had accepted an equitable assignment was sufficient to allege the Provider's standing to bring the action.[3] *1288 Cf. WM Specialty Mortgage, LLC v. Salomon, 874 So.2d 680, 682-83 (Fla. 4th DCA 2004) (holding that a mortgage foreclosure complaint stated a cause of action where a subsequently filed assignment of mortgage executed after the date of the filing of the complaint indicated that the mortgage was physically transferred to the plaintiff before the complaint was filed, raising the possibility of an equitable assignment).
Progressive alleged as an affirmative defense that the Provider did not have standing for lack of an assignment of benefits. Progressive moved for summary disposition of the Provider's claim on this ground. In opposition to summary disposition, the Provider submitted the affidavits of Mr. Joseph and the Provider's office manager, as well as all of the forms signed by Mr. Joseph, including forms acknowledging receipt of specific therapies.
In general, any instruction, document, or act that vests in one party the right to receive funds arguably due another party may operate as an equitable assignment. McClure v. Century Estates, Inc., 96 Fla. 568, 120 So. 4, 10 (1928). "No particular words or form of instrument is necessary to effect an equitable assignment[,] and any language, however informal, which shows an intention on one side to assign a right or chose in action and an intention on the other to receive, if there is a valuable consideration, will operate as an effective equitable assignment." Giles v. Sun Bank, N.A., 450 So.2d 258, 260 (Fla. 5th DCA 1984); see also WM Specialty Mortgage, LLC, 874 So.2d 680. These general rules give rise to two issues concerning an assignment of PIP benefits: (1) the necessity of a writing and (2) the necessity of consideration.
Except where a writing is required by statute, an assignment may be oral and proven by parol evidence. Blvd. Nat'l Bank of Miami v. Air Metal Indus., Inc., 176 So.2d 94, 97-98. (Fla.1965). The affidavits of Mr. Joseph and the office manager are parol evidence that Mr. Joseph had assigned his right to PIP benefits to the Provider at the time he received treatment.
The No-Fault Law, however, appears to require some form of writing. A medical provider's authorization to receive payment directly from the insurer derives from section 627.736(5)(a), Florida Statutes (1999), which provides in part:
Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge only a reasonable amount for the products, services, and accommodations rendered, and the insurer providing such coverage may pay for such charges directly to such person or institution lawfully rendering such treatment, if the insured receiving such treatment or his or her guardian has countersigned the invoice, bill, or claim form approved by the Department of Insurance upon which such charges are to be paid for as having actually been rendered, to the best knowledge of the insured or his or her guardian.
Thus the Provider's right to receive payment directly from the insurer depends upon some instrument such as an invoice, bill, or claim form countersigned by the insured. Such an instrument may constitute evidence that the insured assigned PIP benefits to the medical provider. Cf. Hartford Ins. Co. of the S.E. v. St. Mary's Hosp., Inc., 771 So.2d 1210, 1212 (Fla. 4th DCA 2000) (holding that there was no *1289 evidence that the insured assigned PIP benefits to the hospital because the insured never signed a document described in section 627.736(5)(a)).
In this case, the record contains nineteen documents dated between October 4, 1999, and November 29, 1999  signed by Mr. Joseph  acknowledging the services provided to him on the dates specified. Arguably, a fact issue exists on whether these documents are "invoices" under section 627.736(5)(a), which, combined with parol evidence, establish that Mr. Joseph equitably assigned his right to PIP benefits to the Provider at the time he received treatment.
As noted, an equitable assignment requires valuable consideration. Progressive argues that the existence of an equitable assignment must fail because there is no record evidence of such consideration in this case. At the outset, Progressive, as a third party to the assignment agreement between Mr. Joseph and the Provider, is not entitled to make this challenge. The affirmative defense of lack of consideration for an assignment can be raised only by the assignor. McCampbell v. Aloma Nat'l Bank of Winter Park, 185 So.2d 756, 758 (Fla. 1st DCA 1966).
Moreover, even if a showing of consideration is required, the provision of medical services fulfills this requirement. In State Farm Fire & Casualty Co. v. Ray, 556 So.2d 811, 813 (Fla. 5th DCA 1990), the issue was whether an assignment of insurance benefits to a hospital was revocable or irrevocable. An assignment is irrevocable if it is given for consideration. See id. (citing Richmond Metro. Hosp. v. Hazelwood (In re Hazelwood), 43 B.R. 208, 214 (Bankr.E.D.Va.1984)). Because the insured gave the assignment to the hospital in exchange for medical care and treatment, the assignment was given for consideration and thus was irrevocable. Id. In this case, an issue of fact exists concerning whether Mr. Joseph assigned PIP benefits to the Provider at the time he received treatment.
For this reason, the circuit court could have predicated its reversal of the county court's final judgment of dismissal on the existence of an issue of fact concerning whether Mr. Joseph had equitably assigned PIP benefits to the Provider before the Provider filed its original statement of claim. However, this fact does not vitiate the analysis in the majority opinion. To uphold the circuit court's decision based on the fact issue concerning equitable assignment, we would need to consider this case as if we were conducting a de novo review of the county court's summary disposition. Such an exercise is beyond the scope of our review in this case. On second-tier certiorari review, this court's task is only to determine whether the circuit court afforded procedural due process and applied the correct law. As the majority opinion demonstrates, the circuit court did not apply the correct law, resulting in a miscarriage of justice. Therefore, the issuance of the writ of certiorari quashing the circuit court's decision is entirely appropriate.
NOTES
[1] Although it is not material to our decision, we note that rule 1.190(c) is not included as one of the rules designated as being applicable in all actions covered by the small claims rules. See Fla. Sm. Cl. R. 7.020(a). In addition, rule 1.190(c) has no counterpart in the small claims rules.
[2] See Cochrane v. Fla. E. Coast Ry., 107 Fla. 431, 145 So. 217, 218-19 (1932); Leon v. State, 695 So.2d 1265, 1266-67 (Fla. 4th DCA 1997). See generally Bryan A. Garner, A Dictionary of Modern Legal Usage 56 (2d ed.1995).
[3] The Provider would have been well advised to attach to its statement of claim any written documents supporting its cause of action based on an equitable assignment to ensure compliance with Florida Small Claims Rule 7.050(a)(1).