972 So.2d 1024 (2008)
Ken BURKE, Clerk of the Circuit Court for Pinellas County, Petitioner,
v.
Dennis ESPOSITO, Respondent.
No. 2D07-3263.
District Court of Appeal of Florida, Second District.
January 11, 2008.
Betsy M. Steg, Senior Assistant County Attorney, and Sarah Richardson, Managing Assistant County Attorney, Clearwater, for Petitioner.
Dennis Esposito, pro se.
PER CURIAM.
Denied.
VILLANTI, J., and GREEN, OLIVER L., Senior Judge, Concur.
ALTENBERND, J., Concurs specially with opinion.
ALTENBERND, Judge, Concurring specially.
I concur in the denial of this petition for writ of certiorari. This is a second-tier certiorari petition in which we are reviewing the circuit court's appellate decision affirming a judgment from county court. Our scope of review is thus limited. See, e.g., Progressive Express Ins. Co. v. McGrath Cmty. Chiropractic, 913 So.2d 1281, 1284 (Fla. 2d DCA 2005). The circuit court did not deny due process to Ken Burke, the Clerk of the Circuit Court for Pinellas County (the Clerk), and I cannot conclude that it departed from the essential requirements of the law. On the other hand, a portion of its reasoning is incorrect and the broader issue revealed by this case needs a thoughtful resolution that is binding on all clerks of court in Florida. I write to highlight the issue in hopes that it can be solved either by the legislature or perhaps by precedent established in a case appealed from a circuit court to a district court of appeal.
The issue concerns the proper interpretation of section 28.241(1)(b), Florida Statutes (2005), which permits a clerk of court to charge a fee of up to $50 for "reopening" a circuit court case when the case has been "previously reported as disposed of." See also § 34.041(2), Fla. Stat. (2005) (providing similar provisions for the reopening of county court cases). This case high-lights *1025 that some clerks may be charging filing fees to "reopen" cases that, from any reasonable perspective, should never have been "closed." In this case, the Clerk charged such a fee by relying on the definition of "disposition" in the Summary Reporting System Manual (SRS Manual), a manual created in compliance with the mandate of section 25.075, Florida Statutes (2005). The Clerk used this definition of "disposition" as the definition of "disposed of" for purposes of section 28.241(1)(b).[1] This interpretation may inure to a clerk's benefit because the clerk is entitled to collect up to $50 each time it reopens such a file. See § 28.241(1)(b). I doubt that the legislature intended the definition created by the Office of the State Courts Administrator (OSCA) in the SRS Manual to be binding in the context of section 28.241(1)(b) or that the Florida Supreme Court intended the SRS Manual to be used as a budgetary device under these circumstances.

I. THE FACTS AND PROCEDURAL POSTURE OF THIS CASE
Dennis Esposito was not a party to the foreclosure action that spawned this certiorari proceeding. He was the successful bidder at the foreclosure sale. To complete the sale, he paid $117,000 to the Clerk. Unfortunately, the Clerk had conducted the sale in apparent violation of a bankruptcy stay. Eventually the sale was vacated, but the Clerk did not return Mr. Esposito's money.
When Mr. Esposito sought to obtain his money, the Clerk informed him that the case had been closed and that he would have to pay a $50 filing fee to reopen the case if he wished to recover his money. To Mr. Esposito's credit, he obeyed this seemingly absurd request. After he paid
the money, he filed a pro se lawsuit against the Clerk in the small claims division of county court for return of the filing fee. The Clerk did not object to the county court's jurisdiction. Eventually the county court ruled in Mr. Esposito's favor and entered judgment for $50, court costs, and interest.
The Clerk appealed this ruling to the circuit court. In the circuit court, the Clerk argued that the county court did not have jurisdiction over the subject matter of the dispute. The Clerk asserted that the circuit court in the foreclosure action maintained the exclusive jurisdiction to determine the appropriateness of the reopening fee charge. The Clerk also argued that as a matter of statutory law, he was required to handle the foreclosure proceeding in the manner in which it was handled.
The circuit court issued a written opinion affirming the, county court's judgment. As to the issue of jurisdiction, the circuit court concluded that the challenge to the fee could be litigated in small claims court as a claim for return of money and that Mr. Esposito was not limited to filing a motion in the foreclosure action dnce it was reopened. In the alternative, the circuit court noted that the Clerk had not objected to the county court's jurisdiction and had therefore waived this point on appeal. For this latter proposition, the circuit court relied on Fiocchi Trainello, 566 So.2d 904 (Fla. 4th DCA 1990).
On the issue of the Clerk's statutory obligations, the circuit court agreed with the Clerk that the case was "disposed of" when the final judgment of foreclosure was entered. Nevertheless, it observed that the plaintiff in the foreclosure action had paid a $50 filing fee to reopen the case to file a motion to vacate the certificate of *1026 sale. The circuit court ruled that once the case was reopened in this manner, the order vacating the sale was not a dispositive order allowing the file to be closed once again. Thus, the court concluded, the Clerk could not charge Mr. Esposito another $50 to reopen the case. The circuit court then added to its reasoning its observation that $50 is a de minimus amount and that the circuit court had the power on appeal to reject outright the Clerk's argument because "the law does not concern itself with trifles."

II. SUBJECT-MATTER JURISDICTION
Initially, I note that the trial court's alternative holding that the Clerk waived the issue of subject-matter jurisdiction was incorrect. Florida Rule of Civil Procedure 1.140(h) states that the defense of subject-matter jurisdiction may be raised at any time. It is commonly stated that "subject matter jurisdiction cannot be waived or conferred upon a court by consent or agreement of the parties." Williams v. Starnes, 522 So.2d 469, 471 (Fla. 2d DCA 1988). A judgment of a court without subject-matter jurisdiction is sometimes described as a "void" judgment. N.W.T. v. L.H.D. (In re D.N.H.W), 955 So.2d 1236, 1238 (Fla. 2d DCA 2007).
Admittedly, there is language in Fiocchi that implies that the defense of lack of subject-matter jurisdiction may be waived if not raised in a preliminary motion. 566 So.2d at 904. However, the motion addressed in Fiocchi involved a challenge to both subject-matter jurisdiction and personal jurisdiction. There is no doubt that a challenge to personal jurisdiction can be waived if it is not raised at the inception of the case. See Babcock v. Whatmore, 707 So.2d 702, 704 (Fla.1998). More important, Fiocchi was an appeal from a nonfinal order, and the district court expressly recognized that it did not have jurisdiction to review a nonfinal order refusing to dismiss a complaint.[2]
Thus, I conclude the Clerk did not waive the issue of subject-matter jurisdiction when he failed to raise it in small claims court. Nevertheless, I am inclined to agree with the circuit court's initial assessment that the dispute regarding this fee could be filed either in the circuit court hearing the foreclosure action or thereafter in small claims court, particularly when the person charged the filing fee was not a party to the foreclosure action.

III. FEES TO REOPEN FORECLOSURE FILES IN FLORIDA ARE NOT A TRIFLING MATTER
The circuit court resolved this case by applying a very narrow rule of law, which in turn constrains our authority to review the matter by certiorari. The circuit court essentially held that when a foreclosure action is reopened by a motion to vacate a foreclosure sale and the motion is thereafter granted, the return of the monies paid in the sale is intrinsic to that order and thus the file cannot be properly closed or considered "disposed of under section 28.241(1)(b), at least as it relates to the purchaser, until the Clerk returns the funds in the registry of the court. This rule would not appear to depart from essential requirements of the law, and it applies to a narrow range of cases, thus making certiorari relief inappropriate. See, e.g., Ivey v. Allstate Ins. Co., 774 So.2d 679, 682 (Fla.2000).
If the circuit court had decided this case on broader grounds, for example by declaring that a final judgment of foreclosure did not terminate a foreclosure action for *1027 purposes of section 28.241(1)(b), precedent from this court by way of certiorari may have been appropriate. In this regard, must dispute the trial court's statement that this is a trifling matter. Admittedly, Mr. Esposito and the Clerk have wrangled mightily in this case over $50. For the Clerk, however, much more is at stake. The circuit court's opinion recites that this specific foreclosure action had been "reopened" no less than six times. Thus, in addition to the original filing fee for the action, the Clerk had collected another $300 from parties that had a need to file motions in the foreclosure action after the entry of the final judgment.
There were 57,272 real estate or foreclosure actions filed in circuit courts in Florida in fiscal year 2005-06. See FY 2005-06 Statistical Reference Guide, Fla. Office of the State Courts Adm'r, found at http:// www.flcourts.org/gen_public/stats/bin/ reference_guide/2005_06circuitcivil.pdf (last visited Nov. 27, 2007). Virtually all foreclosure cases result in motions filed after entry of the final judgment. Assuming that only two such motions are filed on average, the interpretation of the law used by the Clerk would have generated an additional $5,700,000 statewide for fiscal year 2005-06 from mortgage foreclosure actions alone. Similar estimates for fiscal year 2006-07 and the current fiscal year would undoubtedly be significantly higher because of the increase in home foreclosures brought on by problems within the subprime mortgage market.[3]
The legislative history for chapter 2003-402, Laws of Florida, the act creating section 28.241(1)(b) and requiring clerks to charge this reopening fee, noted that judicial circuits reported "reopening" 446,000 cases in their civil divisions for fiscal year 2000 to 2001. Fla. H.R. Comm. on Approp., HB 113A (2003A) Staff Analysis 9 (May 27, 2003), found at http://www. myfloridahouse.gov/Sections/Documents/ loaddoc.aspx?FileName=h0113A + revised. ap.doc&DocumentType = Analysis& Bill Number=013A&Session=2003A (last visited Nov. 29, 2007). That would amount to potential gross revenue from a $50 filing fee of $22,300,000. Moreover, the legislative history for section 19 of chapter 2004-265, Laws of Florida, which later amended section 28.241(1)(b), reveals that at the time of that amendment the legislature anticipated that the filing fee to reopen closed cases "will provide an additional $6.4 million in revenue to the state as these revenues will contribute to the excess revenues to be remitted to the state by the clerks." See Fla. S. Comm. on Approp., CS for CS for SB 2962 (2004) Staff Analysis 25 (Apr. 15, 2004), found at http://www. flsenate.gov/data/session/2004/Senate/bills/ analysis/pdf/2004s2962.ap.pdf (last visited Nov. 28, 2007) (emphasis added).[4] In other words, the filing fee to reopen closed cases is not merely a "user fee" to reimburse the clerk of court for administrative costs associated with access to courts but also, in part, a tax generating additional general revenue for the state as a whole.[5] *1028 This seems to be a "trifle" that should warrant concern by an appellate court.

III. THE SOURCE OF THE PROBLEM: RELIANCE ON THE SRS MANUAL FOR FUNCTIONS BEYOND ITS INTENDED PURPOSE
The Clerk argues that he is just following statutory law. While the Clerk may be attempting in good faith to comply with section 28.241(1)(b), there is no reported case law defining "previously reported as disposed of." The Clerk is interpreting the undefined statutory phrase in a manner that favors the Clerk by relying upon the Florida Supreme Court's "Summary Reporting System," which was created pursuant to section 25.075, not for the purposes of section 28.241.
Section 25.075(1) requires the Florida Supreme Court to "develop a uniform case reporting system, including a uniform means of reporting categories of cases, time required in the disposition of cases, and manner of disposition of cases." To that end, the supreme court developed a Summary Reporting System for the purposes of measuring judicial effort. At the direction of the court, the Office of the State Courts Administrator issued the 2002 Summary Reporting System Manual, which can be found at http://www.flcourts. org/gen_public/pubs/srsmanual.shtml. This manual was a revision of existing guidelines directed to clerks. of circuit and county courts for reporting statistics to the Florida Supreme Court in compliance with section 25.075(1).
On the one hand, because the Clerk is required to file reports to satisfy section 25.075, it is not necessarily unreasonable for the Clerk to assume that a disposition for purposes of the reporting system created to satisfy section 25.075 is also a disposition for purposes of section 28.241(1)(b). On the other hand, there is little question that the Summary Reporting System was not created as a budgetary tool of the clerks of court or as a method to establish user fees payable to clerks.[6] The introduction to the SRS Manual states:
While the SRS data is used as a work-load measure for judges, it is not intended to measure the efficiency of the judiciary, state attorneys or public defenders. The primary purpose of the SRS is the certification of need for additional judgeships. Under the provisions of Article V, Section 9 of the Florida Constitution, the Supreme Court is responsible for determining the need for additional judges in the appellate districts and the judicial circuits. . . . The SRS data provides the primary data to project the need for additional judgeships. The Certification of Need for Additional Judgeships process uses weighted caseloads in order to project future workload for judges. This analysis takes into account the complexity of cases filed and the time needed to process them.
http://www.flcourts.org/gen_public/pubs/ bin/srsmanual/Introduction_2002.pdf.
Thus, the Office of the State Courts Administrator created the SRS system primarily to assist in the administrative management of the court system and to provide a measuring tool for judicial workloads. The introduction to the manual acknowledges that other projects rely on these statistics. Nevertheless, nothing suggests that anyone gave consideration to using this reporting method as a fair and *1029 reasonable method to assess user fees for filings in circuit courts.
It appears that the Clerk is using the definition of "disposition" that is contained in the glossary to the SRS Manual:
Disposition: The final decision or judgment which terminates a judicial proceeding. Examples include disposed by judge, disposed by jury, no file, dismissed, transferred, convicted after plea, adjudication withheld, acquitted, convicted, dismissed before hearing, dismissed after hearing, bond estreature and non-jury trial.
http://www.flcourts.org/gen_public/pubs/ bin/srsmanual/Glossary_2002.pdf
This definition may be adequate and useful for the purposes to be served by the SRS Manual. For the purposes of deciding when a case file should be "closed" so as to permit a "reopening" fee, however, it seems necessary to consider that specific types of litigation do not actually "terminate" with a final judgment. A foreclosure action is an obvious example.
This certiorari proceeding is not the proper case in which to evolve a definition of "disposition" for purposes of this statute. That definition must come from another source. It seems to me that the most reasonable solution would involve the legislature's defining this term within section 28.241. If that does not occur, the courts must begin to evolve a definition through case law attempting to interpret the statute.[7] If parties challenge these fees directly in pending circuit court cases or by filing writs of mandamus seeking to compel the clerks to accept filings without payment of fees, the issues will be reviewed in the district courts of appeal in typical appellate proceedings under a de novo standard of review. In the interim, if the clerks of court continue to rely on the SRS Manual for the purposes of section 28.241, those responsible for the publication of that manual may want to take a position on whether the manual is intended to control the interpretation of this statute.
NOTES
[1] Although this record reflects the procedure used only in the Sixth Judicial Circuit, the records in other cases presented to this court suggest Mr. Burke is not alone in this practice.
[2] Indeed, if the district court in Fiocchi was concerned that the circuit court lacked subject-matter jurisdiction, it could have treated the nonfinal appeal as a petition for writ of prohibition and granted relief. See English v. McCrary, 348 So.2d 293, 296-97 (Fla.1977).
[3] At least one internet site claims that the number of foreclosure filings year to date in Florida is 262,954. http://www.realtytrac.com/ state/Florida.html (last visited Dec. 17, 2007).
[4] This is apparently due to the structure established by chapter 2003-402, section 38, which created section 28.37, Florida Statutes (2003), and required the clerks to remit portions of their revenues to the state for deposit in either a Clerks of Court Trust Fund or the General Revenue Fund. Those revenues in the Trust Fund that are not required to resolve deficits for the clerks of court are then transferred monthly to the General Revenue Fund.
[5] This is somewhat ironic given that Revision 7 as enacted by the electorate amended article V, section 14(a) and (b) of the Florida Constitution to require that "[f]unding for the state courts system . . . shall be provided from state revenues appropriated by general law." The legislative implementation of the constitutional amendment appears to require quite the oppositethat funding for the state shall be provided from revenues generated by the court system.
[6] Given the constitutional separation between the courts and clerics in this state, it would seem unusual for the courts to set the ground rules for the clerk's budgetary system.
[7] Section 28.42, Florida Statutes (2005), requires the Office of the State Courts Administrator to "prepare and disseminate a manual of court-related filing fees, service charges, costs, and fines imposed pursuant to state law." This is not a policy-making function, but merely an informational service. The manual currently provided is actually created by the Florida Association of Court Clerks, Inc. See http://www.flcourts.org/gen_public/ funding/bin/manuaLfeesfines3.pdf. I point this out only to demonstrate that this statute does not appear to give OSCA any authority to address the issues identified by this opinion: