# Third District Court of Appeal

## State of Florida

Opinion filed September 30, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1790
Lower Tribunal No. 15-27940
_____

## **IDS Property Casualty Insurance Company,**
Appellant,

vs.

## **MSPA Claims 1, LLC, et al.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

White & Case LLP, and Raoul G. Cantero and Zachary B. Dickens; Ramón A. Abadin, P.A., and Ramón A. Abadin; Maynard, Cooper & Gayle, P.C., and Thomas Julian Butler (Birmingham, AL), for appellant.

MSP Recovery Law Firm, and John H. Ruiz and Michael O. Mena and Arlenys Perdomo and Reynaldo Martinez; Armas Bertran Pieri, and J. Alfredo Armas, Eduardo Bertran, and Francesco A. Zincone, for appellees.

Before LOGUE, C.J., and EMAS,[1] and BOKOR, JJ.

_____

[1] Judge Emas did not participate in oral argument and was assigned to this appeal due to the passing of Judge Hendon.

BOKOR, J.

This is an appeal of an order granting class certification in a personal injury protection (PIP) action for declaratory judgment. IDS, the defendant and insurer below, challenges the certification of a class consisting of all Florida Medicare Advantage Organizations (MAOs)[2] and downstream

---

[2] The Seventh Circuit Court of Appeals has explained the role and function of MAOs in relation to primary insurers under the Medicare Act as follows:

Congress divided the Medicare Act into so-called parts. Part C of the Act allows private entities to provide insurance coverage for some Medicare enrollees. See 42 U.S.C. § 1395w-21(a). These private entities are known as Medicare Advantage Organizations or MAOs. See id. Just like the Medicare program itself, these MAOs act as secondary payers in situations where another insurer—for example, a worker's compensation plan or automobile insurer—is also responsible for paying for medical care. See id. §§ 1395y(b)(2)(A)(ii); 1395w-22(a)(4). These other insurers are known as primary payers.

A simple example illustrates this point. Suppose a driver is injured in a car accident. Assume the driver has a car insurance policy with a $10,000 limit for medical bills associated with an accident and, separately, has coverage from an MAO through Medicare Part C. In an ideal world, the driver's car insurance would cover the first $10,000 in medical expenses with the MAO picking up the rest.

The real world, of course, is not always ideal, and primary payers do not always pay (or timely pay) covered medical expenses. The Medicare Act recognizes this reality and allows an MAO (as a secondary payer) to make "conditional payments" if the primary payer "has not made or cannot reasonably be expected to make payment with respect to such item or service promptly." Id. § 1395y(b)(2)(B). If an MAO makes such a conditional payment, the Act in turn creates a private right of action allowing the MAO to seek reimbursement from the primary payer who should have made payment in the first place.

entities that make conditional payments of Medicare benefits to insureds for which IDS is the primary payer. IDS argues that the representative plaintiffs lack standing and fail to satisfy the requirements for class certification. We agree and reverse.

## FACTS AND BACKGROUND

MSPA and La Ley, the plaintiffs named in the operative complaint, are two limited liability companies that were assigned the rights to reimbursement of certain conditional medical payments made to IDS's insureds by Florida Healthcare Plus, a now-defunct MAO. Florida Healthcare Plus initially attempted to assign its reimbursement rights to La Ley in April 2014, and La Ley in turn assigned its rights to MSPA in February 2015.

---

See id. § 1395y(b)(3)(A). Importantly, this private right of action allows an MAO to recover double damages for any unreimbursed conditional payment. See id.

Because of the ubiquity of insurance in the modern economy, people often have overlapping coverage through both a primary payer and an MAO. As a result, MAOs sometimes make conditional payments with insufficient knowledge about the responsible primary payer. If an MAO later learns that a primary payer shouldered principal responsibility for a particular covered expense, the organization is able to seek reimbursement from the primary payer. But trying to collect these unreimbursed payments can be tedious, costly, and uncertain. This creates an incentive for MAOs to outsource this process—essentially to assign or sell its right to reimbursement to another party.

MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co., 994 F.3d 869, 871–72 (7th Cir. 2021).

3

However, because Florida Healthcare Plus was under receivership at the time and required the approval of the receiver before assigning its reimbursement rights, and because the receiver initially disputed the validity of the assignments, these assignments did not become effective until June 1, 2016, via a settlement agreement with the assignees.[3]

MSPA brought its original complaint against IDS on December 2, 2015, initially asserting class-action breach of contract claims on behalf of all similarly-situated MAOs due to IDS's failure to identify its Medicare-eligible insureds for which IDS had a primary obligation and reimburse secondary payers for their conditional payments to those insureds. MSPA argued both that IDS failed to make mandatory primary payments for the reasonable and necessary medical expenses of eligible insureds and that IDS failed to make such payments or reimburse secondary payers. La Ley was not named as a party.

The trial court initially granted class certification, but this court reversed the class certification and remanded for further proceedings. See IDS Prop. Cas. Ins. Co. v. MSPA Claims 1, LLC, 263 So. 3d 122 (Fla. 3d DCA 2018) (IDS I). There, we concluded that the putative class failed to satisfy the predominance requirement of Fla. R. Civ. P. 1.220(b)(3). As an alternative

---

[3] The parties do not dispute that MSPA is the current assignee.

4

basis for reversal, we also found that MSPA lacked standing because the assignment of its reimbursement rights from La Ley had not yet been finalized at the time of the complaint and "MSPA's standing must exist at the inception of its case." Id. at 125.

On remand, MSPA amended the complaint to add La Ley as a plaintiff and solely seek a declaratory judgment that IDS was required under the Medicare Act and the Florida Motor Vehicle No-Fault Law to determine which of its insureds were eligible for Medicare Part C benefits and notify secondary payers to enable coordination of benefits. The trial court again granted class certification, and IDS now appeals once more.

**ANALYSIS**

We see no substantive change in the legal analysis as applicable to the issues raised in this appeal from the issues resolved in IDS I. We begin by addressing the issue of standing, which is a "threshold inquiry in a motion for class certification." See Sosa v. Safeway Premium Fin. Co., 73 So. 3d 91, 116 (Fla. 2011). "A trial court's decision as to whether a party has satisfied the standing requirement is reviewed de novo." Id. "To satisfy the standing requirement for a class action claim, the class representative must illustrate that a case or controversy exists between him or her and the defendant, and that this case or controversy will continue throughout the

5

existence of the litigation." Id. "A case or controversy exists if a party alleges an actual or legal injury," which is "distinct and palpable, not abstract or hypothetical." Id. at 117. In a declaratory judgment action such as this, the plaintiff must also demonstrate an "actual, present practical need for the declaration" and that the declaration would address "a present, ascertained or ascertainable state of facts or present controversy as to a state of facts." May v. Holley, 59 So. 2d 636, 639 (Fla. 1952); see also Santa Rosa County v. Admin. Com'n, Div. of Admin. Hearings, 661 So. 2d 1190, 1192–93 (Fla. 1995).

IDS, relying on our prior decision in IDS I, primarily argues that MSPA lacks standing because it was not the assignee of Florida Healthcare Plus's reimbursement rights at the time of the original complaint, and that it could not cure this defect solely by adding La Ley as a party. We agree. In IDS I, we expressly found that MSPA did not have standing at the inception of the case. 263 So. 3d at 125 ("MSPA filed its amended complaint in this case on March 8, 2016, several months prior to the Receiver's approval. MSPA's standing must exist at the inception of its case; the settlement agreement cannot exhume standing."). "Under the law of the case doctrine, a trial court is bound to follow prior rulings of the appellate court as long as the facts on which such decision are based continue to be the facts of the case." Fla.

Dep't of Transp. v. Juliano, 801 So. 2d 101, 106 (Fla. 2001); see also Greene v. Massey, 384 So. 2d 24, 28 (Fla. 1980) ("All points of law which have been adjudicated become the law of the case . . . ."). Moreover, "a party's standing is determined at the time the lawsuit was filed. Stated another way, the plaintiff's lack of standing at the inception of the case is not a defect that may be cured by the acquisition of standing after the case is filed." McLean v. JP Morgan Chase Bank Nat'l Ass'n, 79 So. 3d 170, 173 (Fla. 4th DCA 2012) (quotation and citation omitted)). "Thus, a party is not permitted to establish the right to maintain an action retroactively by acquiring standing to file a lawsuit after the fact." Id.

Here, the material facts pertaining to MSPA's standing are unchanged from the prior appeal; MSPA does not dispute that it was not the assignee of Florida Healthcare Plus's reimbursement rights at the time of the original complaint. MSPA retorts that because La Ley would have had standing at the time of the complaint, and because MSPA shares an identity of interest with its assignors, the amended complaint adding La Ley as a party should relate back to the filing of the original complaint to confer standing upon both plaintiffs. However, the relation-back doctrine generally does not apply where a party is added, nor can a plaintiff without standing substitute another plaintiff, and even if permissible, neither addition nor substitution of a party

7

can cure the original plaintiff's lack of standing at the time of the complaint. See Rayner v. Aircraft Spruce-Advantage Inc., 38 So. 3d 817, 820 (Fla. 5th DCA 2010) ("The rule which permits the relation back of amended pleadings generally does not apply where a new party is added." (footnote omitted)); Progressive Express Ins. Co. v. McGrath Cmty. Chiropractic, 913 So. 2d 1281, 1286 (Fla. 2d DCA 2005) (explaining how Fla. R. Civ. P. 1.190(c) allows relation back of amended pleadings but "does not permit a party to establish the right to maintain an action retroactively"); Sandefur v. RVS Cap., LLC, 183 So. 3d 1258, 1260 (Fla. 4th DCA 2016) ("While it is true that the plaintiff by substitution stands in the shoes of the original plaintiff[] . . . the substituted party acquires the standing (if any) of the original plaintiff at the time the case was filed. The substituted plaintiff must still prove *its own standing* when judgment is entered." (citations and quotations omitted)).

"For better or for worse, it is settled that it is not enough for the plaintiff to prove that it has standing when the case is tried; it must also prove that it had standing when the complaint was filed." Dickson v. Roseville Props., LLC, 198 So. 3d 48, 50–51 (Fla. 2d DCA 2015) (reversing judgment for mortgagor in foreclosure action where mortgagor failed to demonstrate that it was holder of mortgage via assignment at time of complaint); see also Peoples v. Sami II Tr. 2006-AR6, 178 So. 3d 67, 69 (Fla. 4th DCA 2015)

8

(same). Accordingly, bound by the standing analysis in IDS I, and concluding that the amended complaint suffers from the same defects and cannot be cured through further amendment, we are compelled to reverse and remand for entry of a judgment in favor of IDS. See Progressive, 913 So. 2d at 1285 ("[T]he plaintiff's lack of standing at the inception of the case is not a defect that may be cured by the acquisition of standing after the case is filed."); Haratz v. Dental Team of Atlantis, LLC, 372 So. 3d 282, 286 (Fla. 4th DCA 2023) (distinguishing standing from failure to comply with a condition precedent to suit and noting that "a party's lack of standing to bring an action is a defect that cannot be cured mid-suit").

While we need not address the secondary issue of class certification, we note as well that the putative class action appears to suffer from the same or similar infirmities as identified in IDS I. There, we found that MSPA failed to satisfy the predominance requirement of Fla. R. Civ. P. 1.220(b)(3) because any recovery of unpaid benefits would ultimately turn on the individual PIP coverage of each of IDS's eligible insureds, so "MSPA has failed to establish that common issues predominate over individual issues." IDS I, 263 So. 3d at 124. MSPA argues that because the amended complaint now seeks only a declaratory judgment regarding IDS's obligations to the class members, certification was appropriate under Fla. R. Civ. P.

1.220(b)(1)(A) or 1.220(b)(2) instead. However, as IDS notes, the complaint still effectively seeks money damages and intends to remedy past harms, such that highly individualized analysis of individual insureds would be required to identify any actual failures to comply with the No-Fault Act and Medicare Act. Moreover, because IDS's primary payer obligations would be the same regardless of whether they were satisfied in any particular case, different rulings in separate cases would not be likely to result in inconsistent judgments or "trap the party opposing the class in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another." McBirney v. Autrey, 106 F.R.D. 240, 245 (N.D. Tex. 1985) (quotation omitted) (discussing equivalent federal rule). Thus, class certification would likely have been improper regardless. See Freedom Life Ins. Co. of Am. v. Wallant, 891 So. 2d 1109, 1117 (Fla. 4th DCA 2004) (noting that "(b)(2) certification does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages" (quotation omitted)); IDS I, 263 So. 3d at 124 ("To quantify the claims of the putative class members will require a comprehensive and distinct analysis of *each* underlying PIP claim and automobile accident. Such analysis will necessarily include, at a minimum, the amounts paid by IDS, the payees of IDS, whether such payments exhausted the insureds' PIP

10

benefits, the amounts paid by Florida Healthcare Plus, and the payees of Florida Healthcare Plus. Plainly, this is one of those cases where merely proving entitlement to reimbursement from IDS for payments made by Florida Healthcare Plus on behalf of M.A., in no way proves the cases of the other class members."). However, because the lack of standing at the inception of the suit controls the outcome here, we reverse on that basis and remand with instructions to dismiss the action.

Reversed and remanded with instructions.